**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DLJ MORTGAGE CAPITAL, INC.; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; CREDIT SUISSE SECURITIES (USA) LLC (F/K/A CREDIT SUISSE FIRST BOSTON LLC); ANDREW A. KIMURA; JEFFREY A. ALTABEF; EVELYN ECHEVARRIA; MICHAEL A. MARRIOTT; and THOMAS ZINGALLI,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:11-30047-MAP<br><br>Oral Argument Requested |

**MASSMUTUAL'S OPPOSITION TO**
**THE CREDIT SUISSE OFFICER DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

RELEVANT ALLEGATIONS OF THE COMPLAINT ...............................................2

ARGUMENT ..................................................................................................................5

I.    THE COURT HAS PERSONAL JURISDICTION OVER THE OFFICER
      DEFENDANTS .....................................................................................................5

      A.    Section 414(h) of the Massachusetts Securities Act Confers Personal
            Jurisdiction......................................................................................................5

      B.    The Court Also Has Personal Jurisdiction Over the Officer Defendants
            under the Massachusetts Long-Arm Statute ...................................................7

            1.    The Officer Defendants "Transacted Business" in Massachusetts
                  Within the Meaning of the Long-Arm Statute.............................................8

            2.    MassMutual's Claims Arise from Business Transacted in
                  Massachusetts .............................................................................................10

            3.    The Fiduciary Shield Doctrine Is Inapplicable ..........................................11

      C.    Exercising Personal Jurisdiction over the Officer Defendants Comports
            with Due Process...........................................................................................13

            1.    The Officer Defendants Purposefully Availed Themselves of the
                  Benefits and Obligations of Massachusetts Law ........................................13

            2.    MassMutual's Control Person Claims Relate Directly to the
                  Officer Defendants' Activities in Massachusetts.......................................16

            3.    The Exercise of Personal Jurisdiction Is Reasonable ................................17

      D.    At a Minimum, MassMutual Should Be Afforded Jurisdictional Discovery ........18

II.   MASSMUTUAL HAS STATED CONTROL PERSON CLAIMS AGAINST
      THE OFFICER DEFENDANTS .........................................................................19

CONCLUSION..............................................................................................................21

## TABLE OF AUTHORITIES

**Page**

### Cases

*Adelson v. Hananel,*
510 F.3d 43 (1st Cir. 2007)..................................................16

*Am. Microtel, Inc. v. Massachusetts,*
Civ. A. No. 93-5874, 1995 WL 809575 (Mass. Super. Ct. Jan. 27, 1995)...........6, 9

*Aristids Lambergs v. Total Health Sys., Inc.,*
Civ. A. No. 88-0670, 1990 WL 98491 (D. Mass. July 3, 1990)...........................20

*Asahi Metal Indus. Corp., Ltd. v. Super. Ct. of Cal.,*
480 U.S. 102 (1987))...........................................14

*In re Auto. Refinishing Paint Antitrust Litig.,*
358 F.3d 288 (3d Cir. 2004)...........................................5

*In re Baan Co. Sec. Litig.,*
245 F. Supp. 2d 117 (D.D.C. 2003) ...........................................5

*Barrett v. Lombardi,*
239 F.3d 23 (1st Cir. 2001)...........................................5

*Boit v. Gar-Tec Prods., Inc.,*
967 F.2d 671 (1st Cir. 1992)...........................................5, 19

*In re Brooks Automation, Inc. Sec. Litig.,*
Civ. A. No. 06-11068, 2007 WL 4754051 (D. Mass. Nov. 6, 2007) ...................20

*Bulldog Investors Gen. P'ship v. Commonwealth,*
929 N.E.2d 293 (Mass. 2010) ...........................................6, 13, 14

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)...........................................13, 17

*In re CINAR Corp. Sec. Litig.,*
186 F. Supp. 2d 279 (E.D.N.Y. 2002) ...........................................15

*Calder v. Jones,*
465 U.S. 783 (1984)...........................................12

*Carlson Corp. v. Univ. of Vermont,*
402 N.E.2d 483 (Mass. 1980) ...........................................8

*Derensis v. Coopers & Lybrand Chartered Accountants,*
930 F. Supp. 1003 (D.N.J. 1996) ...........................................14

*Dodora Unified Commc'ns, Inc. v. Direct Info. Pvt. Ltd.,*
379 F. Supp. 2d 10 (D. Mass. 2005) ...........................................10

*Dowling v. Narragansett Capital Corp.*,
   735 F. Supp. 1105 (D.R.I. 1990).............................................................................................20

*Ealing Corp. v. Harrods Ltd.*,
   790 F.2d 978 (1st Cir. 1986).....................................................................................................8

*Eaton Vance Distributors, Inc. v. Grainger*,
   Civ. A. No. C040158, 2003 WL 1521896 (Cal. Ct. App. Mar. 25, 2003)........................16, 17

*Gary Scott Int'l, Inc. v. Baroudi*,
   981 F. Supp. 714 (D. Mass. 1997) ..........................................................................................11

*Good Hope Indus., Inc. v. Ryder Scott Co.*,
   389 N.E.2d 76 (Mass. 1979) ...............................................................................................7, 8

*Hahn v. Vermont Law Sch.*,
   698 F.2d 48 (1st Cir. 1983)........................................................................................................8

*Harbourvest Int'l Private Equity Partners II-Direct Fund, L.P. v. Axent Techs., Inc.*,
   Civ. A. No. 99-2188, 2000 WL 1466096 (Mass. Super. Ct. Aug. 31, 2000) ..........5, 6, 8, 9, 12

*Interface Group-Mass., LLC v. Rosen*,
   256 F. Supp. 2d 103 (D. Mass. 2003) .....................................................................................11

*Itoba Ltd. v. LEP Group PLC*,
   930 F. Supp. 36 (D. Conn. 1996)......................................................................................15, 16

*Johnson Creative Arts, Inc. v. Wool Masters, Inc.*,
   573 F. Supp. 1106 (D. Mass. 1983) ........................................................................................12

*Kelly v. McKesson HBOC, Inc.*,
   Civ. A. No. 99C-09-265, 2002 WL 88939 (Del. Super. Ct. Jan. 17, 2002) ...........................10

*Kennedy v. Josephthal & Co., Inc.*,
   Civ. A. No. 82-913, 1983 WL 1314 (D. Mass. May 9, 1983) ..................................................5

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)..................................................................................................................18

*In re LDK Solar Sec. Litig.*,
   Civ. A. No. 07-05182, 2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) .............................15, 16

*Litchfield Fin. Corp. v. Buyers Source Real Estate Grp.*,
   389 F. Supp. 2d 80 (D. Mass. 2005) .........................................................................................9

*MFS Series Trust III v. Grainger*,
   96 P.3d 927 (Utah 2004) ..........................................................................................................17

*In re Magnetic Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003)........................................................................................................5

*Marine Midland Bank, N.A. v. Miller*,
   664 F.2d 899 (2d Cir. 1981)......................................................................................................11

*Marram v. Kobrick  Offshore Fund, Ltd.*,
    809 N.E.2d 1017 (Mass. 2004) ...................................................................................14, 15

*Mass. Inst. of Tech. v. Micron Tech., Inc.*,
    508 F. Supp. 2d 112 (D. Mass. 2007) .......................................................................17

*McNamara v. Bre-X Minerals Ltd.*,
    46 F. Supp. 2d 628 (E.D. Tex. 1999) ..........................................................................7

*Nowak v. Tak How Invs., Ltd.*,
    94 F.3d 708 (1st Cir. 1996) .......................................................................................18

*Openwave Sys. Inc. v. Fuld*,
    Civ. A. No. 08-5683, 2009 WL 1622164 (N.D. Cal. June 6, 2009) ....................9, 14

*Pettengill v. Curtis*,
    584 F. Supp. 2d 348 (D. Mass. 2008) ........................................................................5

*Principal Mut. Life Ins. Co. v. Glick*,
    Civ. A. No. 94-0296, 1994 WL 878819 (Mass. Super. Ct. Dec. 14, 1994).......11, 12

*Pritzker v. Yari*,
    42 F.3d 53 (1st Cir. 1994) .........................................................................................18

*Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta*,
    553 F. Supp. 328 (E.D. Pa. 1982) .............................................................................14

*Ross v. Ross*,
    358 N.E.2d 437 (Mass. 1976) .....................................................................................8

*San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*,
    979 F.2d 1356 (9th Cir. 1992) .....................................................................................7

*Saturn Mgmt. LLC v. GEM-Atreus Advisors, LLC*,
    754 F. Supp. 2d 272 (D. Mass. 2010) ...........................................................8, 10, 13

*Sawtelle v. Farrell*,
    70 F.3d 1381 (1st Cir. 1995)......................................................................................15

*Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*,
    739 F. Supp. 2d 686 (D. Del. 2010).............................................................................7

*Surpitski v. Hughes-Keenan Corp.*,
    362 F.2d 254 (1st Cir. 1966) .....................................................................................19

*Tatro v. Manor Care, Inc.*,
    625 N.E.2d 549 (Mass. 1994) ........................................................................8, 10, 11

*United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.*,
    987 F.2d 39 (1st Cir. 1993) .......................................................................................19

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992).....................................................................................17

*United States v. Swiss Am. Bank, Ltd.*,
    191 F.3d 30 (1st Cir. 1999) ................................................................................................. 19

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .................................................................................................... 13, 14

*Yankee Grp., Inc. v. Yamashita*,
    678 F. Supp. 20 (D. Mass. 1988) ........................................................................................ 12

## **Statutes**

Mass. Gen. Laws ch. 110A, § 410(a) ................................................................................... 1, 3, 20

Mass. Gen. Laws ch. 110A, § 410(b) ...................................................................................... passim

Mass. Gen. Laws ch. 110A, § 414(h) ...................................................................................... passim

Mass. Gen. Laws ch. 223A, § 3(a) ................................................................................... 2, 7, 9, 11

Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") respectfully submits this Opposition to the Motion to Dismiss MassMutual's claims under Massachusetts Uniform Securities Act Section 410(b) filed by Andrew A. Kimura, Jeffrey A. Altabef, Evelyn Echevarria, Michael A. Marriott, and Thomas Zingalli (collectively, the "Officer Defendants"). For the reasons set forth below, the Officer Defendants' Motion to Dismiss should be denied.

## <u>INTRODUCTION</u>

MassMutual's cause of action for control person liability against the Officer Defendants under the Massachusetts Uniform Securities Act (the "Massachusetts Securities Act") is fully supported by well-pleaded facts. Each of the Officer Defendants, as officers and directors who signed the registration statements for the securitizations at issue, was in a position to control, and in fact did control, the corporate defendants that sold residential mortgage-backed securities to MassMutual between May 2006 and June 2007. MassMutual has alleged in detail (i) each Officer Defendant's position of control over the controlled entity; (ii) the affirmative acts by which each Officer Defendant exercised such control; and (iii) the specific misrepresentations made by the controlled entity that constitute a primary violation of the Massachusetts Securities Act.

The above allegations, in and of themselves, state a claim for control person liability under Section 410(b) of the Massachusetts Securities Act. All that is required is a primary violation of Section 410(a) by the controlled entity and allegations of a defendant's control over the primary violator. Notably, the Officer Defendants do not contest that they had control over the corporate defendants within the meaning Section 410(b); they challenge only the sufficiency of MassMutual's allegations of a primary violation by the corporate defendants. As discussed in the Opposition to the Corporate Defendants' Motions to Dismiss, this challenge is without merit.

The Officer Defendants' other argument is that this Court does not have personal jurisdiction over them. But the Officer Defendants wholly ignore Section 414(h) of the Massachusetts Securities Act, which confers personal jurisdiction over non-residents who violate the Act. The Officer Defendants also rely on an incorrect analysis of the Massachusetts long-arm statute. Under *either* Section 414(h) of the Massachusetts Securities Act *or* Section 3(a) of the Massachusetts long-arm statute, this Court may properly exercise personal jurisdiction over the Officer Defendants, who directed the corporate defendants to sell securities in Massachusetts. The exercise of personal jurisdiction satisfies the requirements of due process. The Officer Defendants' Motion to Dismiss should be denied.

## <u>RELEVANT ALLEGATIONS OF THE COMPLAINT</u>

Between May 2006 and June 2007, MassMutual purchased over $70 million of residential mortgage-backed securities. Compl. ¶ 37. The Offering Materials related to these securities were rife with material misrepresentations. *Id.* ¶¶ 37-171. The securities were sold in nine securitizations sponsored by defendant DLJ Mortgage Capital, Inc. ("DLJ"), a subsidiary of Credit Suisse Holdings (USA), Inc. ("Credit Suisse"). *Id.* ¶ 9. Defendant Credit Suisse First Boston Mortgage Securities Corp. ("CSFB Mortgage") was the Depositor for all nine securitizations at issue. *Id.* ¶ 10. Defendant Credit Suisse Securities (USA) LLC ("CS Securities") was the Underwriter for all nine securitizations. *Id.* ¶ 11. DLJ, CSFB Mortgage, and CS Securities are collectively referred to as the "Corporate Defendants."

Through their Offering Materials—the registration statements, prospectuses, and prospectus supplements—the Corporate Defendants represented to MassMutual and other investors that the securitized loans had certain characteristics, such as defined loan-to-value ratios and owner-occupancy statistics, and had been originated based on prudent underwriting standards that ensured a borrower could repay the loan. *See, e.g.*, Compl. ¶¶ 38-92, 111-112,

2

163.  Unbeknownst to MassMutual, however, the loans that the Corporate Defendants included in the securitizations deviated substantially from what was represented.  *See, e.g.*, *id.* ¶¶ 98-103, 110, 113-115, 162-163.  The Corporate Defendants disregarded or abandoned disclosed underwriting guidelines; as a result, the subject loans often were issued to borrowers regardless of their ability to pay, based on "overstated incomes, inflated appraisals, false verifications of employment, or exceptions to underwriting criteria that had no proper justification."  *Id.* ¶ 99; *see also id.* ¶¶ 98, 100-103.  MassMutual, which did not have access to the loan files, depended on the Corporate Defendants to verify the accuracy of the representations in the Offering Materials. *Id.* ¶¶ 5, 36, 38, 113, 160.  Having made material misrepresentations, the Corporate Defendants are liable as primary violators of Massachusetts Uniform Securities Act Section 410(a)(2).  *See generally* Corp. Opp. Br. at 10-35.

As corporate entities, the Corporate Defendants could act only through their officers and directors.  Accordingly, MassMutual has asserted claims against the Officer Defendants, as control persons of the Corporate Defendants, under Massachusetts Uniform Securities Act Section 410(b).  Compl. ¶¶ 193-202.  Section 410(b) provides that control persons of primary securities violators, including officers or directors, are jointly and severally liable to the same extent as the primary violators unless the control persons can prove they did not know, and could not have known, of the material misrepresentations and omissions.  *See* Mass. Gen. Laws ch. 110A, § 410(b).

MassMutual has alleged that each of the Officer Defendants was in a position to control and did control one or more of the Corporate Defendants.  Compl. ¶¶ 180-184.  Specifically, defendants Kimura, Altabef, and Zingalli were executive officers of CSFB Mortgage, while defendants Kimura, Altabef, Echevarria, and Marriott were directors of CSFB Mortgage, the

Depositor for all securitizations at issue. *Id.* ¶¶ 13-16, 180-184. The Officer Defendants do not

challenge these allegations. *See, e.g.*, Jt. Br. at 33-39; CS Mem. at 10-11; Kimura Decl. ¶¶ 2-9;

Altabef Decl. ¶¶ 2-9.

The controlled entity, CSFB Mortgage, was responsible for structuring the

securitizations, creating the trusts that sold the securities, preparing the false Offering Materials

that were used to sell the securities to MassMutual and other investors, and registering the

securitizations with the Securities and Exchange Commission. *See, e.g.*, Compl. ¶¶ 31-32, 174-

175. The Officer Defendants were the ones who carried out these corporate tasks, as evidenced

by their signatures on the registration statements for the securitizations. *Id.* ¶¶ 180-184. Indeed,

certain Officer Defendants were responsible not only for the securitizations at issue in this

litigation, but also for Credit Suisse's overall securitization business and strategy. Specifically,

defendants Kimura and Marriott were co-heads of Credit Suisse's structured products trading

division, which encompassed mortgage-backed securities. *Id.* ¶¶ 12, 15. In their roles, the

Officer Defendants controlled the Massachusetts-directed conduct that violated the

Massachusetts Securities Act.

Although counsel for the Officer Defendants agreed to accept service of the summons

and Complaint in this action on behalf of the Officer Defendants, MassMutual also served each

of the Officer Defendants in accordance with Section 414(h) of the Massachusetts Securities Act

between June 8 and June 16, 2011. Declaration of Stephen E. Spelman, filed concurrently

herewith ("Spelman Decl."), ¶ 3; Dkt. Nos. 40-44.

## ARGUMENT

## I.   THE COURT HAS PERSONAL JURISDICTION OVER THE OFFICER DEFENDANTS

MassMutual has adequately alleged facts that withstand the Officer Defendants' personal jurisdiction challenges.  Before discovery, a plaintiff need only make a *prima facie* showing of personal jurisdiction.  *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 124 (D.D.C. 2003) (a plaintiff need only allege facts which, if true, would establish personal jurisdiction); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 292 n.3 (3d Cir. 2004) (discussing difference between pre- and post-discovery personal jurisdiction challenges); *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (same); *cf. Kennedy v. Josephthal & Co., Inc.*, Civ. A. No. 82-913, 1983 WL 1314, at *8 (D. Mass. May 9, 1983).[1]  Because MassMutual has made legally sufficient jurisdictional allegations of the Officer Defendants' control over the Corporate Defendants and over the securitizations at issue, the Officer Defendants' Motion to Dismiss on this basis should be denied.

### A.   Section 414(h) of the Massachusetts Securities Act Confers Personal Jurisdiction

Section 414(h) of the Massachusetts Securities Act provides a sufficient basis for this Court to exercise personal jurisdiction over the Officer Defendants.  *See Harbourvest Int'l Private Equity Partners II-Direct Fund, L.P. v. Axent Techs., Inc.*, Civ. A. No. 99-2188, 2000 WL 1466096, at *7 (Mass. Super. Ct. Aug. 31, 2000) (Section 414(h) "is independent of

---

[1]  The cases relied on by the Officer Defendants discuss only post-discovery jurisdictional challenges.  *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674 (1st Cir. 1992) (referring to deposition testimony offered by plaintiffs as proof of jurisdictional facts); *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 356 (D. Mass. 2008) (relying on *Boit* for applicable standard); *see also In re Baan*, 245 F. Supp. 2d at 124 (discussing post-discovery standard in the First Circuit and identifying *Barrett v. Lombardi*, 239 F.3d 23 (1st Cir. 2001), as a post-discovery case).  Because no jurisdictional discovery has taken place in this litigation, the more lenient standard cited above applies.

5

jurisdiction which may be acquired under the Long-Arm Statute.").  Section 414(h) provides that

any person subject to liability under the Massachusetts Securities Act agrees to accept service in

Massachusetts:

> When any person, including any nonresident of the commonwealth, engages in
> any conduct prohibited or made actionable by [the Massachusetts Securities Act]
> or any rule or order hereunder, and he has not filed a consent to service of process
> under subsection (g) and personal jurisdiction over him cannot otherwise be
> obtained in the commonwealth, that conduct shall be considered equivalent to his
> appointment of the secretary or his successor in office to be his attorney to receive
> service of any lawful process in any non-criminal suit, action, or proceeding
> against him . . . which grows out of that conduct and which is brought under this
> chapter or any rule or order hereunder, with the same force and validity as if
> served on him personally.

Mass. Gen. Laws ch. 110A, § 414(h).

Massachusetts courts have interpreted Section 414(h) as an independent source for

exercising personal jurisdiction over individuals alleged to be control persons under Section

410(b).  *See Harbourvest*, 2000 WL 1466096, at *7; *Am. Microtel, Inc. v. Massachusetts*, Civ. A.

No. 93-5874, 1995 WL 809575, at *10-*11 (Mass. Super. Ct. Jan. 27, 1995) (where

officer/majority shareholder was found to be a controlling person under Section 410(b), "[t]he

Director [of the Securities Division] had personal jurisdiction over [officer] pursuant to [§

414(h)]"); *see also Bulldog Investors Gen. P'ship v. Commonwealth*, 929 N.E.2d 293, 299

(Mass. 2010) ("This authority [under § 414(h)] to serve process would be ineffective in

enforcing the act . . . unless accompanied by the power to bring a respondent before a tribunal to

adjudicate whether a violation occurred.  Interpreting the statute to authorize service of process

without authorizing personal jurisdiction would transform the substituted service provision into a

nullity.").

The above decisions by Massachusetts courts are consistent with those of federal courts,

which also have exercised personal jurisdiction over individuals when they are alleged to be

liable as controlling persons.  *See, e.g., San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992) (finding court had personal jurisdiction over defendant where plaintiff made colorable showing that defendant might be liable as control person); *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 700 (D. Del. 2010) ("The standard for personal jurisdiction under § 20(a) is met if plaintiff makes a non-frivolous allegation that defendant controlled a person liable for securities fraud."); *McNamara v. Bre-X Minerals Ltd.*, 46 F. Supp. 2d 628, 638 (E.D. Tex. 1999) ("[T]he Court has personal jurisdiction over any Defendant as to which the Plaintiffs make a *prima facie* showing of control person liability.").

MassMutual has adequately alleged that the Officer Defendants are subject to liability under Section 410(b).  *See infra* Section II.  MassMutual has also served each of the Officer Defendants in accordance with Section 414(h).  Spelman Decl. ¶ 3.  This Court therefore has personal jurisdiction over each of the Officer Defendants pursuant to Section 414(h).

**B.     The Court Also Has Personal Jurisdiction Over the Officer Defendants under the Massachusetts Long-Arm Statute**

Section 3(a) of the Massachusetts long-arm statute provides a separate and independent basis for exercising personal jurisdiction over the Officer Defendants.  *See* Mass. Gen. Laws ch. 223A, § 3(a).  The long-arm statute confers jurisdiction "if the defendant either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business."  *Good Hope Indus., Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 80 (Mass. 1979) (noting that the Massachusetts long-arm statute "functions as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States") (internal quotations and citations omitted).  Contrary to the assertions by the Officer Defendants, the requirements of the long-arm statute are satisfied here.

7

1.      The Officer Defendants "Transacted Business" in Massachusetts Within
        the Meaning of the Long-Arm Statute

MassMutual has adequately alleged facts showing that the Officers Defendants transacted

business in Massachusetts.  The "transacting any business" clause of the long-arm statute is

construed broadly.  *See Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 551-52 (Mass. 1994)

("[G]enerally the purposeful and successful solicitation of business from residents of the

Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement."); *see also

Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982 (1st Cir. 1986) ("'The statute's reference to

'transacting any business' . . . is general and applies to any purposeful act by an individual,

whether personal, private or commercial.'") (quoting *Ross v. Ross*, 358 N.E.2d 437, 439 (Mass.

1976)); *Saturn Mgmt. LLC v. GEM-Atreus Advisors, LLC*, 754 F. Supp. 2d 272, 277 (D. Mass.

2010) ("The notion of transacting business is broadly construed and easy to satisfy."); *Hahn v.

Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir. 1983) (purposeful action of mailing application

information and acceptance letter sufficient to constitute transacting business under the "broadly

construed Massachusetts long-arm statute").  Actual physical presence of a defendant in the

jurisdiction is not required.  *See Good Hope Indus.*, 389 N.E.2d at 82-83 (exercising personal

jurisdiction over defendant with no place of business or any agents in Massachusetts).  Instead,

where a defendant seeks to participate in or takes action that has an effect on the economic life of

Massachusetts, the transacting business clause is satisfied.  *See Carlson Corp. v. Univ. of

Vermont*, 402 N.E.2d 483, 486 (Mass. 1980) ("Where the nonresident defendant's contacts with

Massachusetts had substantial commercial consequence in this State, personal jurisdiction was

found, notwithstanding the absence of actual physical presence in Massachusetts.");

*Harbourvest*, 2000 WL 1466096, at *5 (noting that a corporate officer's active participation in a

corporation's in-state activities may confer personal jurisdiction).

8

Here, the Officer Defendants' alleged conduct plainly had a purposeful effect on the economic life of Massachusetts sufficient to satisfy the transacting business clause. The Officer Defendants directed CSFB Mortgage to structure the securitizations at issue and to register the securities for nationwide sale, including in Massachusetts. Absent the Officer Defendants' direction and control, the securities would not have been sold in Massachusetts. Courts have acknowledged that long-arm statutes confer personal jurisdiction over officers who control securities violators. *See, e.g.*, *Harbourvest*, 2000 WL 1466096, at *5 (defendant directors' active management and control over transaction with effect on the economic life of the Commonwealth sufficient to impose jurisdiction over them); *Am. Microtel*, 1995 WL 809575, at *11 n.8 (noting that under Section 3(a) of the long-arm statute, a court would have personal jurisdiction over CEO/majority shareholder of a company liable for violating the Massachusetts Securities Act); *see also Openwave Sys. Inc. v. Fuld*, Civ. A. No. 08-5683, 2009 WL 1622164, at *12 (N.D. Cal. June 6, 2009) (non-resident directors' and officers' control over corporate defendants' misrepresentations and omissions had purposeful effect on California to confer personal jurisdiction).

The cases that the Officer Defendants rely on to argue that they did not transact business in Massachusetts are distinguishable. *See* Jt. Br. at 35-36. In *Litchfield Fin. Corp. v. Buyers Source Real Estate Grp.*, 389 F. Supp. 2d 80 (D. Mass. 2005), the court found that a lawyer's act of sending letters to Massachusetts *did satisfy* the "transacting business" requirement of the long-arm statute, which "may be satisfied even when the defendant's forum contacts are quite sparse." *Id.* at 86. There, the court nevertheless declined to exercise jurisdiction on due process grounds because it found that the lawyer had sent the letters on behalf of his clients, at their request, and for their benefit. *Id.* at 88. In contrast, the Officer Defendants in this case directed the Corporate

Defendants to offer and sell securities in Massachusetts on their own behalf and for their own benefit.

Defendants' remaining cases are similarly inapposite. In *Dodora Unified Commc'ns, Inc. v. Direct Info. Pvt. Ltd.*, 379 F. Supp. 2d 10 (D. Mass. 2005), the court held that there was no evidence that any transaction had taken place in Massachusetts, or that the non-resident defendants had any relationship with the defendants that had conceded personal jurisdiction. *Id.* at 13-14. In contrast, the securities transactions in this case plainly took place in Massachusetts, and the Officer Defendants exercised control over the Corporate Defendants that have conceded personal jurisdiction. Further, in *Kelly v. McKesson HBOC, Inc.*, Civ. A. No. 99C-09-265, 2002 WL 88939 (Del. Super. Ct. Jan. 17, 2002), a Delaware court concluded that there was no evidence showing any contacts with Delaware other than Delaware serving as the state of incorporation. *Id.* at *17. In contrast, here, the Corporate Defendants, which operated under the direction and control of the Officer Defendants, directed their conduct into Massachusetts to sell securities to MassMutual in violation of the Massachusetts Securities Act. Accordingly, the Officer Defendants' clear contacts with Massachusetts satisfy the transacting business clause.

        2.        <u>MassMutual's Claims Arise from Business Transacted in Massachusetts</u>

MassMutual also has adequately alleged facts showing that its control person claims under Section 410(b) arise from business transacted in Massachusetts. The control person claims are based specifically on the offers and sales of securities in Massachusetts by the Corporate Defendants under the direction and control of the Officer Defendants. *See* Compl. ¶¶ 193-202. Accordingly, there can be no question that the claims arise from business transacted in Massachusetts. *See Saturn Mgmt. LLC*, 754 F. Supp. 2d at 278 ("[T]he 'arising from' requirement is generously construed in favor of asserting personal jurisdiction."); *Tatro*, 625 N.E.2d at 554 (a claim arises from business transacted in Massachusetts if the business was a

but-for or proximate cause of the claim); *see also Gary Scott Int'l, Inc. v. Baroudi*, 981 F. Supp. 714, 716 (D. Mass. 1997) (personal jurisdiction established where plaintiff's cause of action arose from defendant's marketing and sale of products in Massachusetts).

> 3.      The Fiduciary Shield Doctrine Is Inapplicable

Although MassMutual's allegations satisfy the elements of the Massachusetts long-arm statute, the Officer Defendants make a final challenge to the exercise of personal jurisdiction under the long-arm statute by arguing that their actions as officers and directors of the Corporate Defendants cannot provide a basis for personal jurisdiction.  *See* Jt. Br. at 34-36.  But the Officer Defendants' argument—that actions taken in a corporate role do not "count" for jurisdictional purposes—rests on an incorrect interpretation of applicable law.  As the Officer Defendants' own authority makes clear, the "requirement for an independent jurisdictional basis may be satisfied when a corporate officer transacts in-forum business *either* in his personal capacity *or* solely on behalf of the corporation."  *Interface Group-Mass., LLC v. Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003) (emphasis in original); *see Principal Mut. Life Ins. Co. v. Glick*, Civ. A. No. 94-0296, 1994 WL 878819, at *3 (Mass. Super. Ct. Dec. 14, 1994) ("Even though [defendant's] actions which brought her into contact with Massachusetts were part of her employment duties, they constitute the purposeful conduct that satisfies § 3(a).").  The corporate actions of the Officer Defendants are legally sufficient to warrant this Court's exercise of personal jurisdiction over them.

The Officer Defendants' argument is a misapplication of the fiduciary shield doctrine, which shields individuals in some states from personal liability, and attendant personal jurisdiction, when they act solely as representatives of a corporation.  *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981) (in states where the fiduciary shield doctrine applies to tortious conduct, "if an individual has contact with a particular state only by virtue of

11

his acts as a fiduciary of the corporation, he may be shielded from the exercise . . . of jurisdiction

over him personally on the basis of that conduct").  Unfortunately for the Officer Defendants, the

fiduciary shield doctrine is not recognized as a limitation on personal jurisdiction in

Massachusetts.  *See Yankee Grp., Inc. v. Yamashita*, 678 F. Supp. 20, 22 (D. Mass. 1988)

("Massachusetts courts have never recognized the fiduciary shield doctrine as a limitation on the

reach of the long-arm statute" and are unlikely to adopt such a limitation).

Under the Massachusetts long-arm statute, officers, directors, and employees of

corporations are subject to personal jurisdiction in Massachusetts based on actions taken in their

official capacities as long as those actions satisfy statutory requirements.  *See, e.g.*, *Johnson*

*Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983) (president of

corporation was subject to personal jurisdiction based on actions taken in his official capacity);

*Harbourvest*, 2000 WL 1466096, at *5 ("The Defendant Directors' active management of, and

'plenary control' over this deal . . . is sufficient to impose jurisdiction on these Defendant

Directors.") (internal citation omitted); *Principal Mut. Life. Ins. Co.*, 1994 WL 878819, at *3

(mortgage manager's actions as part of employment duties, which brought her into contact with

Massachusetts, constituted purposeful conduct that satisfied section 3(a) of the long-arm statute);

*see also Calder v. Jones*, 465 U.S. 783, 790 (1984) (while personal jurisdiction over employees

is not conferred simply by the corporation's contacts with a forum, "their status as employees

does not somehow insulate them from jurisdiction").  In this case, the Officer Defendants'

actions in directing the Corporate Defendants to offer and sell securities in Massachusetts satisfy

statutory requirements and subject them to personal jurisdiction under the Massachusetts long-

arm statute.  *See supra* Sections I.B.1 & 2.  The long-arm statute therefore provides a second

basis for this Court to exercise personal jurisdiction over the Officer Defendants, in addition to

Section 414(h) of the Massachusetts Securities Act.

### C.  Exercising Personal Jurisdiction over the Officer Defendants Comports with Due Process

The exercise of personal jurisdiction over the Officer Defendants in this case amply

satisfies the requirements of due process.  An exercise of jurisdiction satisfies the due process

standard when it meets three requirements, all of which are met in this case:  (1) the defendant

must purposefully avail itself of the privilege of conducting activities within the state, thus

invoking the benefits and protections of its laws; (2) the claim must arise out of or relate to the

defendant's contacts with the forum (what the Officer Defendants refer to as "minimum

contacts"); and (3) the assertion of jurisdiction over the defendant must be reasonable.  *See*

*Bulldog*, 929 N.E.2d at 300; Jt. Br. at 37.

### 1.  The Officer Defendants Purposefully Availed Themselves of the Benefits and Obligations of Massachusetts Law

MassMutual's allegations establish that the Officer Defendants purposefully availed

themselves of the privilege of conducting business in Massachusetts.  The Officer Defendants'

contacts with the forum were voluntary and foreseeable, such that they should reasonably have

anticipated "being haled into court" in Massachusetts.  *See Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 475 (1985); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980); *Saturn Mgmt. LLC*, 754 F. Supp. 2d at 279 (purposeful availment involves

considerations of both voluntariness and foreseeability).  Contrary to the Officer Defendants'

assertions, MassMutual's allegations demonstrate that the Officer Defendants subjected

themselves to Massachusetts law and the jurisdiction of this Court when they purposefully and

voluntarily engaged in activities specifically directed at Massachusetts as control persons,

including directing the Corporate Defendants to sell securities in the Commonwealth and signing

13

the specific registration statements for the securities sold to MassMutual in Massachusetts.  *See, e.g.*, *Derensis v. Coopers & Lybrand Chartered Accountants,* 930 F. Supp. 1003, 1013 (D.N.J. 1996) (exercise of personal jurisdiction was proper where plaintiffs made a *prima facie* showing that defendants were controlling persons who allegedly approved and disseminated financial statements that they knew would influence the securities' prices in forum state); *Openwave*, 2009 WL 1622164, at *12 (director and officer defendants' direction of corporate defendants' fraudulent scheme in California satisfied purposeful availment).

The fact that this case arises out of the sale of securities into Massachusetts further supports the conclusion that the Officer Defendants purposefully availed themselves of the specific benefits of Massachusetts law.  Although the purposeful availment requirement can be satisfied simply by placing a product into the stream of commerce with the expectation that it will end up in Massachusetts, *see World-Wide Volkswagen Corp.*, 444 U.S. at 297-98, the Officer Defendants here also specifically intended and designed their products to be in compliance with Massachusetts securities laws.  *See Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta*, 553 F. Supp. 328, 333 (E.D. Pa. 1982) (designing the product for the market in the forum state establishes purposeful availment of that jurisdiction) (cited in *Asahi Metal Indus. Corp., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).  Given Massachusetts' clear and public regulation of securities offerings in the Commonwealth, including through the Massachusetts Securities Division and via the Massachusetts Securities Act, the Officer Defendants knew it was reasonably foreseeable that they would be haled into Massachusetts courts if the offering did not comply with the regulations.  *See World-Wide Volkswagen Corp.*, 444 U.S. at 297-98; *Bulldog*, 929 N.E.2d at 301 ("Massachusetts has a strong interest in adjudicating violations of Massachusetts securities law."); *cf. Marram v. Kobrick Offshore Fund,*

*Ltd.*, 809 N.E.2d 1017, 1026 (Mass. 2004) (noting that the purpose of the Massachusetts

Securities Act is to "provide[ ] strong protections for a buyer who received misleading

information from a seller of securities").

The Officer Defendants' arguments do nothing to rebut the detailed allegations that

demonstrate purposeful availment.  In particular, their citation to *Sawtelle v. Farrell*, 70 F.3d

1381, 1391 (1st Cir. 1995), does not apply because their conduct with respect to the

Massachusetts securities market was by no means merely "random, isolated, or fortuitous" (in

contrast to the facts in *Sawtelle*, a legal malpractice case).  Rather, as described above, the

Officer Defendants purposefully directed the Corporate Defendants to sell securities in the

Commonwealth and signed specific registration statements for the securitizations at issue.

Courts have repeatedly held that signatures on securities filings, along with the ability to direct

and control the documents' contents and use, are sufficient to establish personal jurisdiction.

*See, e.g.*, *In re LDK Solar Sec. Litig.*, Civ. A. No. 07-05182, 2008 WL 4369987, at *6 (N.D. Cal.

Sept. 24, 2008) (jurisdiction found over "individual defendants who sign or, as control persons,

approve the filing or disseminating of, particular forms required by the SEC which they knew or

should have known would be relied on by U.S. investors") (internal quotations and citation

omitted); *see also In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305-06 (E.D.N.Y. 2002)

("[I]t is perfectly reasonable to exercise jurisdiction over [individual defendant] based solely on

her signing the 1999 Registration Statement . . . . There is no clearer example of purposeful

availment of the privilege of doing business in the United States than this."); *Itoba Ltd. v. LEP*

*Group PLC*, 930 F. Supp. 36, 41 (D. Conn. 1996) (personal jurisdiction existed over foreign

defendant who approved forms knowing they would be filed with the SEC and relied on by

investors in the United States).

2.      MassMutual's Control Person Claims Relate Directly to the Officer
        Defendants' Activities in Massachusetts

Under the second prong of the due process analysis, MassMutual's claims relate directly

to the Officer Defendants' activities in this Commonwealth.  "[R]elatedness refers to the

requirement that the underlying claim 'arise out of' or be 'related to' the activities within the

forum state."  *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) ("The relatedness standard is

a flexible, relaxed standard which focuses on the nexus between the defendant's contacts and the

plaintiff's cause of action.") (internal quotations and citation omitted).  As described above, the

Officer Defendants' forum-related activities included directing the Corporate Defendants to sell

securities in Massachusetts, including to MassMutual, and signing the registration statements for

the securitizations at issue in this litigation.  The registration statements—combined with the

prospectuses and prospectus supplements—constitute the Offering Materials that contained the

false statements that are the basis of MassMutual's claims.  "Courts regularly assert jurisdiction

in such circumstances."  *In re LDK Solar Sec. Litig.*, 2008 WL 4369987, at *6 (defendants

signed a false prospectus, which was integral to plaintiff's claim, and caused it to be filed with

the SEC); *see also Itoba Ltd.*, 930 F. Supp. at 41 (jurisdiction was appropriate because causal

nexus was met by plaintiff's allegation that it relied on an SEC form approved by a foreign

director in purchasing securities).

The cases the Officer Defendants rely on do not alter this analysis.  In *Eaton Vance*

*Distributors, Inc. v. Grainger*, Civ. A. No. C040158, 2003 WL 1521896, at *4 (Cal. Ct. App.

Mar. 25, 2003)—an unpublished case—the sole officer specifically identified as having signed

"irregular" corporate financial statements (which were merely incorporated by reference into the

offering materials) had also issued a letter opinion in connection with the offering specifically

*excluding* any representations regarding the accuracy of the financial statements from its

16

coverage.  Thus, unlike here, because the officer explicitly severed his connection to the false statements, he was found to lack any forum-directed actions.  The court in *MFS Series Trust III v. Grainger*, 96 P.3d 927, 931-32 (Utah 2004), which involved substantially similar allegations and the same defendants as in *Eaton Vance*, arrived at the same conclusion employing the same analysis.  Neither applies to the claims here.

### 3.      The Exercise of Personal Jurisdiction Is Reasonable

Finally, MassMutual's allegations establish that the exercise of personal jurisdiction over the Officer Defendants is reasonable under the circumstances of this case.  The reasonableness of a court's exercise of personal jurisdiction over individual defendants for due process purposes is assessed under a flexible, multipart test that has been referred to as the five "Gestalt factors."  This analysis includes consideration of:  "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992).

The burden is on the Officer Defendants to present "a compelling case" that the exercise of jurisdiction would not be reasonable.  *See Burger King*, 471 U.S. at 476-78; *see also Mass. Inst. of Tech. v. Micron Tech., Inc.*, 508 F. Supp. 2d 112, 124 (D. Mass. 2007) ("[T]here is a heavy burden on the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (internal quotations and citation omitted).  In the instant case, the Officer Defendants do not appear to contest reasonableness, and for good reason:  Litigating the control person claims in Massachusetts, where primary liability

also is being litigated, is manifestly reasonable, as each and every one of the relevant factors

strongly favors the exercise of jurisdiction:

- *Burden*:  The Officer Defendants have not shown any "special or unusual burden" in defending a suit in Massachusetts.  *See Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994) ("[T]his factor is only meaningful where a party can demonstrate some kind of special or unusual burden.").  Indeed, the Officer Defendants are represented by the same counsel as the Corporate Defendants defending the litigation here.

- *Forum State's Interest*:  Massachusetts has an indisputably strong interest in interpreting and enforcing its own securities laws and protecting its investors and the integrity of its markets.

- *Plaintiff's Interest*:  A single suit in Massachusetts affords MassMutual convenient and effective relief, and MassMutual's choice of forum should be afforded deference.  *See Pritzker*, 42 F.3d at 64, *see also Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.").

- *Judicial System's Interest*:  The judicial system has an interest in avoiding piecemeal litigation in multiple forums.  Allowing this case to be handled by a single court in Massachusetts would avoid risks of conflicting rulings and timing delays that may prevent effective resolution of the controversy.  *See Pritzker*, 42 F.3d at 64.

- *Sovereign Interest*:  Massachusetts, like any state, has an interest in advancing its public policies and providing a convenient forum to redress injuries caused by out-of-state actors.  *See Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) ("Massachusetts has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claims.  These interests are best served by the exercise of jurisdiction in Massachusetts.").

For the reasons discussed above, exercise of jurisdiction over the Officer Defendants

fully comports with due process.

### D.    At a Minimum, MassMutual Should Be Afforded Jurisdictional Discovery

MassMutual has satisfied two independent bases for asserting personal jurisdiction over

the Officer Defendants.  *See supra* Sections I.A-C.  To the extent there is any doubt about

personal jurisdiction, however, the hearing should be continued, and MassMutual should be

afforded discovery to respond to the five declarations that the Officer Defendants have submitted.  *See United States v. Swiss Am. Bank, Ltd.*, 191 F. 3d 30, 46 (1st Cir. 1999) (vacating denial of motion for jurisdictional discovery); *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir. 1966) (reversing a judgment of dismissal where the district court disallowed jurisdictional discovery); *see also United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.*, 987 F. 2d 39, 47-48 & n.18 (1st Cir. 1993) ("[I]f, on the record before it, the district court had decided the personal jurisdiction issue *adversely* to plaintiffs without at least affording them the opportunity to respond to [the defendant's] argument and/or to request discovery, we almost certainly would have declined to affirm the district court's judgment and held the ruling to be an abuse of the court's discretion.") (emphasis in original); *Boit*, 967 F.2d at 681 (refusal to defer ruling on Rule 12(b)(2) motion until after discovery is permitted on personal jurisdiction issues can be abuse of discretion).[2]

## II.   MASSMUTUAL HAS STATED CONTROL PERSON CLAIMS AGAINST THE OFFICER DEFENDANTS

MassMutual has adequately alleged that each of the Officer Defendants is liable under Section 410(b), which imposes liability on "[e]very person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, [and] every person occupying a similar status or performing similar functions."  Mass. Gen. Laws ch. 110A, § 410(b).  MassMutual has alleged (1) a primary violation of subsection 410(a) by each

---

[2]   Notably, the Officer Defendants' declarations are silent with respect to their roles in controlling the Corporate Defendants' Massachusetts contacts in connection with the securitizations at issue.  *See, e.g.*, Kimura Decl. ¶¶ 2-9.  To the extent discovery is needed, MassMutual is entitled to discover, *inter alia*, each Officer Defendant's (i) contacts with Massachusetts and control over the Corporate Defendants' Massachusetts contacts in connection with the securitizations at issue; (ii) knowledge of marketing efforts by the Corporate Defendants to potential investors in Massachusetts; and (iii) diligence in ensuring the Corporate Defendants' compliance with the Massachusetts securities laws.

Corporate Defendant; and (2) facts showing that the Officer Defendants were officers or directors of, or otherwise controlled, the Corporate Defendants, which is all that is required to state a claim.  *See In re Brooks Automation, Inc. Sec. Litig.*, Civ. A. No. 06-11068, 2007 WL 4754051, at *13 (D. Mass. Nov. 6, 2007); *Aristids Lambergs v. Total Health Sys., Inc.*, Civ. A. No. 88-0670, 1990 WL 98491, at *2 (D. Mass. July 3, 1990).

The Officer Defendants do not dispute that they are adequately alleged to be controlling persons within the meaning of Section 410(b).  *See* Jt. Br. at 39-41; CS Mem. at 10-11.  Among other things, as officers and directors of the Corporate Defendants, they are presumptively control persons.  *See Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1122 (D.R.I. 1990) ("[D]irectors are prima facie considered 'controlling persons.'") (citation omitted).

Instead, the Officer Defendants argue only that MassMutual has failed to allege an underlying violation of Section 410(a) by the Corporate Defendants.  Jt. Br. at 39.[3]  As described in detail in the Opposition to the Corporate Defendants' Motion to Dismiss, however, there is no basis for contesting the allegations of a primary violation.  *See generally* Corp. Opp. Br.  MassMutual has sufficiently alleged that each of the Corporate Defendants sold it securities using an untrue statement or omission of material fact.  *See id.*

---

[3]  The Officer Defendants adopt the arguments set forth in the Joint Brief and do not move to dismiss MassMutual Section 410(b) claim on any other substantive basis.

## <u>CONCLUSION</u>

For the foregoing reasons, the Officer Defendants' Motion to Dismiss MassMutual's control person claims under Massachusetts Uniform Securities Act Section 410(b) should be denied.


DATED:  June 28, 2011                    EGAN, FLANAGAN AND COHEN, P.C.

By:      /s/ Edward J. McDonough Jr.
Edward J. McDonough Jr. (BBO 331590)
Stephen E. Spelman (BBO 632089)
Egan, Flanagan and Cohen, P.C.
67 Market Street, P.O. Box 9035
Springfield, Massachusetts  01102
Telephone:  (413) 737-0260
Fax:  (413) 737-0121
ejm@efclaw.com;
ses@efclaw.com

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY

Mark Roellig (BBO 669117)
Executive Vice President and General Counsel
Bernadette Harrigan (BBO 635103)
Assistant Vice President & Counsel
Eleanor P. Williams (BBO 667201)
Assistant Vice President & Counsel
Massachusetts Mutual Life Insurance Company
1295 State Street
Springfield, Massachusetts  01111
Telephone:  (413) 788-8411
Fax:  (413) 226-4268
bharrigan@massmutual.com;
ewilliams@massmutual.com

Of counsel:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Philippe Z. Selendy (*pro hac* admission pending)
Jennifer J. Barrett (*pro hac* admission pending)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Fax (212) 849-7100

A. William Urquhart (*pro hac* admission pending)
Harry A. Olivar, Jr. (*pro hac* admission pending)
Molly Stephens (*pro hac* admission pending)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Fax (213) 443-3100

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 28th day of June, 2011.


*/s/ Edward J. McDonough Jr.*
_____
Edward J. McDonough Jr.