**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br>       Plaintiff,<br>   v.<br>DLJ MORTGAGE CAPITAL, INC., et al.,<br>       Defendants. | Civil Action No. 11-cv-30047-MGM |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br>       Plaintiff,<br>   v.<br>CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., et al.,<br>       Defendants. | Civil Action No. 11-cv-30048-MGM |

**DECLARATION OF RICHARD W. PAYNE III**

I, Richard W. Payne III, make this declaration pursuant to 28 U.S.C. § 1746. I hereby state as follows:

1. I have been retained by Massachusetts Mutual Life Insurance Company to provide expert testimony in this case. My credentials are set forth in my expert report served on June 17, 2016. I understand that my report has been filed as Exhibit 7 to the Omnibus Declaration of Jonathan Sablone in Support of Credit Suisse's Motions to Exclude Expert Testimony.

2. I have reviewed the section of Credit Suisse's Memorandum of Law in Support of its Motion to Exclude the Expert Testimony of Richard W. Payne III ("Credit Suisse Brief") discussing my use of employer reverifications.

3. In my experience, it is very common in the mortgage industry for various entities, including, inter alia, mortgage originators, securitization sponsors, securitization underwriters, quality assurance firms, due diligence firms, and entities including trustees at the direction of investors and other owners of loans that are engaged in repurchase analysis, to request information such as annual income figures, job title, and employment status, from the employers that borrowers listed on their mortgage applications. Such requests are commonly referred to in the industry as "verifications" or "reverifications," and are not limited to the months or years surrounding the origination of the mortgage. In fact, particularly with respect to quality assurance, due diligence, and repurchase analysis, the reverification requests may take place many years after the origination of the mortgage.

4. Reverifications are fundamental to the review processes in the secondary origination and securitization markets. In my opinion, not being able to conduct reverifications in

order to assess the credit quality of the collateral would have a substantial, material impact on liquidity in RMBS markets.

5. Verifications and reverifications are used for a number of purposes, including to support expert re-underwriting work in RMBS litigation. Verifications and reverifications are an important part of the analysis in determining, for example, whether the loans complied with originator guidelines, whether the underwriter of the mortgage complied with guideline requirements relating to assessment of the borrower's ability to repay the mortgage, whether the originator failed to follow up on red flags regarding the borrower's file, and whether the borrower's stated income was reasonable. Verifications and reverifications are also used to assess whether loans complied with representations and warranties made in the transaction documents related to securitizations.

6. I have worked as a re-underwriting expert in mortgage-backed securities actions more than two dozen times, and I routinely include reverifications of income, employment and/or bank deposits as part of my review. I use reverifications to, among other things, determine if a loan complied with guidelines at the time of origination, determine if the borrower mispresented information in the loan application, determine if the income stated by the borrower was evaluated for reasonableness by the underwriter at origination, and determine if the underwriter adequately assessed the borrower's ability to repay the loan. No court has ever found my use of reverifications to be improper.

7. In the above-captioned actions, reverifications of income, job title, and employment status were requested by the re-underwriting team at Opus Capital Markets Consultants, LLC ("Opus"), which assisted me in my forensic review. Opus attempted to contact the employer by telephone and send a fax or email to the employer requesting information. The

form requesting information was two pages long (including fax cover sheet), and requested that the employer hand-write five lines of employment information (including start date, position, and annual income), then complete three tick-boxes (regarding source of income, whether still working, and whether working full or part-time). If the employer responded that they did not want to complete the form (or could not), or if the employer did not respond after three follow-up calls, Opus took no further action.

8. Page 11 of the Credit Suisse Brief states that "For at least 49 loans that Mr. Payne alleges have 'Substantially Increased Credit Risk', Mr. Payne bases his opinions in part on employment re-verifications that were not available to the origination underwriter." Page 12 states that at least 41 of these loans were "stated loans." Credit Suisse does not explain how it determined these numbers, and I do not know how Credit Suisse reached these conclusions. I attempted to confirm the correctness of the numbers and was unable to do so. Based on that, I believe that Credit Suisse's statements are incorrect.

9. Similarly, I believe that Credit Suisse is incorrect about the number of loans implicated by Credit Suisse's arguments about missing documents, post-origination information, and compensating factors (Credit Suisse Brief at 6, 8, 13).

10. I have reviewed my Exhibit 2A that contains information on the loans that I determined had underwriting defects that substantially increase the credit risk associated with the loans. Based on that review, and lacking any explanation from Credit Suisse for its numbers, I have found 23 stated income loans where at least one of my defect findings was based in part on information obtained from an employer verification.

11.     I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed this 27th day of March, 2017, at Summit, New Jersey.

## CERTIFICATE OF SERVICE

     I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on this 28th day of March, 2017.

                                                                     */s/ Lester C. Houtz*